J. MARTIN WHITE and Others, Respondents, *v.* JOHN C. SCHREIBER, Appellant.

*Recovery of personal property — evidence as to the responsibility of officers of a corporation and their liability — statement to a commercial agency — when an error in the reception of evidence will be disregarded.*

Upon the trial of an action brought to recover the possession of personal property, it was alleged that the defendant wrongfully took the property and retained it under and by virtue of an execution issued upon a judgment recovered against a certain corporation; that the property had been sold by the plaintiffs on credit to such corporation; that the sale thereof was induced by the fraud of such corporation, and was, therefore, fraudulent and void, and that no title passed by reason thereof to such corporation.

Sheridan, the president and business manager of the corporation, was called as a witness by the plaintiffs, and, among other things, he was asked, with reference to the pecuniary responsibility of one Monckton, who was the treasurer of the company and a director thereof, the following question: "Did you know of his having any property outside of his interest in this stock in 1891?" This was objected to "as incompetent and immaterial," which objection was overruled and an exception taken, and the answer was: "No, sir, I did not; I have not known of his having any property besides his interest in this stock in the past three years." It appeared that the witness had known Monckton for ten or twelve years, and had been associated with him in business for several years.

*Held,* that the objection was properly overruled, and the weight of the evidence was for the jury.

One Noyes was called as a witness by the plaintiffs upon the trial of such action, and testified that he was the superintendent in the city of Utica of an agency which was organized for the purpose of reporting the financial standing of business firms and corporations and others doing a mercantile business; that he knew the plaintiffs' firm, and knew Sheridan, the president and business manager of such corporation; that he had a conversation with Sheridan at a specified date. The question was then asked: "Will you state the conversation?" It was objected to as "incompetent, immaterial and irrelevant, and there is no foundation laid for it." The court replied: "I think it is competent as the declaration of an officer in charge of the company's business," and the objection was overruled and an exception taken. The witness answered: "I called upon Mr. Sheridan, and I first informed him that I had not found any certificate showing their condition filed with the county clerk; he informed me that they had not filed any; then I stated: 'If that is the case, your company is in better condition now than before, and that practically makes your directors liable for all the debts of the concern,' and he says: 'Yes, I understand so;' then I says: 'If that is the case I will change the rating from what it was before, a capital of $5,200.00, and give you a higher credit rating;' and I says: 'If there has

been no change in the directors or officers of the company, of course they would be personally held liable for the debts;' he said there had been no change; so, on the information received from Mr. Sheridan, I rewrote the report; I asked him if Mr. Callahan was still a director; he said that he was; that there had been no change in the directors; I always judged Mr. Callahan to be a man of financial responsibility." The witness was then asked: "Did this information go into your book which is issued? [Objected to; that witness should not be permitted to state what went into the book. Objection overruled. Exception taken by defendant.]" The witness answered that the rating on which the report was based went into the book. The counsel for the defendant moved to strike out what the witness stated, and the whole of it, all that he stated as having occurred between him and Mr. Sheridan. The motion was denied and exception taken.

No objection to the reception of such evidence was taken on the ground that it did not appear that any creditor or any person ever saw or received any information from the rating put into the report.

It was shown that the statement that Mr. Callahan was still a director of such corporation was not true, and it appeared that he was the only responsible man connected with the business.

*Held,* that the denial of the motion to strike out the evidence was proper;

That it was not clear that enough was not shown to make it proper as a contemporaneous act reflecting on the question of intent.

After it was proven upon such trial on the part of such defendant that he acted under an execution against such corporation and a valid levy was conceded, the plaintiffs called the defendant as a witness and asked the question: "Were you indemnified in this case?" This was objected to as "incompetent, irrelevant and immaterial." The objection was overruled and an exception was taken.

*Held,* that although, strictly speaking, the ruling might be erroneous, the reception of such evidence did not harm the defendant, and upon an appeal taken in his behalf the judgment rendered against him should be affirmed.

APPEAL by the defendant, John C. Schreiber, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Oneida on the 18th day of January, 1894, upon the verdict of a jury rendered after a trial at the Oneida Circuit, with notice of an intention to bring up for review upon such appeal an order entered in said clerk's office on the 1st day of February, 1894, denying the defendant's motion for a new trial made upon the minutes.

The action was brought to recover the possession of a quantity of hop sacking. It was alleged by the plaintiffs that on the 20th of August, 1892, they were the owners of the property and entitled to its possession, and that on that day the defendant wrongfully took

the same and detains it although demanded by the plaintiffs; that on the 23d of March, 1892, and the 19th of April, 1892, the plaintiffs sold and delivered the property on credit to the Sheridan Scotch Cap Company, a domestic corporation doing business at Utica; that said company was then to its own knowledge insolvent, but concealed that fact, and obtained the goods with the preconceived design and intent at the time not to pay for the same, and with the intent to cheat and defraud the plaintiffs; that the sale was fraudulent and void and no title to the goods passed; that on or about the 20th of August, 1892, the defendant, as sheriff of Oneida county, levied on the same under an execution against the company in favor of one Shaughnessy. The answer was a general denial and a justification under the execution. The verdict awarded the possession to the plaintiffs and fixed the value at $881.

*W. E. Lewis,* for the appellant.

*Jones & Townsend,* for the respondents.

MERWIN, J.:

No point is made by the appellant on the facts. It is, however, claimed that the court erred in three of its rulings on the admission of evidence:

1. James P. Sheridan, who was the president of the company and its business manager, was called as a witness by the plaintiffs, and, among other things, he was asked, with reference to the pecuniary responsibility of one Monckton, who was the treasurer of the company and a director, the following question: "Did you know of his having any property outside of his interest in this stock in 1891?" This was objected to "as incompetent and immaterial," and objection overruled and exception taken, and the answer was: "No, sir; I did not. I have not known of his having any property besides his interest in this stock in the past three years." The suggestion on the part of the defendant is that, conceding that it was proper for the plaintiffs to show the financial responsibility of Mr. Monckton, the method of doing it permitted by the court was improper and that the negative evidence of Sheridan was not admissible. It appeared that Sheridan had known Monckton for ten or twelve

years, and had been associated with him in business for several years. The objection was, we think, properly overruled. The weight of the evidence was for the jury. The circumstances as to Monckton's responsibility the plaintiffs had a right to show. No report had been filed by the company in January, 1892, so that the directors were personally liable to a certain extent.

2. One W. T. Noyes was called as a witness by the plaintiffs and testified that he was the superintendent in Utica of the Bradstreet Company, an agency which was organized for the purpose of reporting the financial standing of business firms and corporations and others doing a mercantile business, and had offices in all the principal cities in the United States; that he knew the plaintiffs' firm, and knew Sheridan and had a conversation with him on the 19th of February, 1892, at the office of the Sheridan Scotch Cap Company. The question was then asked: "Will you state the conversation?" This was objected to "as incompetent, immaterial and irrelevant, and there is no foundation laid for it." The court replied: "I think it is competent as the declaration of an officer in charge of the company's business," and the objection was overruled and exception taken. The witness answered: "I called upon Mr. Sheridan, and I first informed him that I had not found any certificate showing their condition filed with the county clerk; he informed me that they had not filed any; then I stated, 'If that is the case, your company is in better condition now than before, and that practically makes your directors liable for all the debts of the concern;' and he says, 'Yes, I understand so;' then I says, 'If that is the case, I will change the rating from what it was before, a capital of $5,200.00, and give you a higher credit rating;' and I says, 'If there has been no change in the directors or officers of the company, of course they would be personally held liable for the debts;' he said there had been no change; so on the information received from Mr. Sheridan, I rewrote the report; I asked him if Mr. Callahan was still a director; he said that he was; that there had been no change in the directors; I always judged Mr. Callahan to be a man of financial responsibility." The following then occurred: "Q. Did this information go into your book which is issued? [Objected to that witness should not be permitted to state what went into the book. Objection overruled. Exception taken by

defendant.] A. The rating on which this report is based went into the book. Counsel for defendant: I ask to strike out what this witness has testified to, and the whole of it; all that he states as having occurred between him and Mr. Sheridan. The Court: That I refuse. Exception taken by defendant."

It is claimed that the court erred in admitting the testimony of Noyes, and that the motion to strike out should have been granted. The argument is that it did not appear that any creditor or any person ever saw or received any information from the rating put into the report. This objection was not taken, and, if it had been, it may be that it might have been obviated. The company was evidently getting a good deal of credit about that time. Besides, it does not seem to be entirely settled that enough was not shown to make it proper as a contemporaneous act reflecting on the question of intent. The statement that Mr. Callahan was still a director was not true. It already appeared that he was the only responsible man connected with the business, and Mr. Sheridan, for the company, was willing a rating should be based on his responsibility, and it was so entered. In *Hersey* v. *Benedict* (15 Hun, 282, 287) Judge TALCOTT says: "The same principle upon which the evidence of cotemporaneous frauds is admitted, as bearing on the intent of the party in committing the fraud principally in question, would lead to the admission of evidence of an attempt to commit a similar fraud, at about the same time, by similar means, whether successful or not."

We are not satisfied that there was any such error, in admitting the evidence or in denying the motion to strike out, as would properly call for a reversal.

3. After it was proved on the part of defendant that he acted under an execution against the company and a valid levy was conceded, the plaintiffs called the defendant as a witness and asked the question: "Were you indemnified in this case?" An objection to this as "incompetent, irrelevant and immaterial" was overruled and exception taken. This ruling is claimed to be erroneous. This, strictly speaking, may be so, but it is a little difficult to see how the defendant was harmed. The real controversy was between the plaintiffs and the judgment creditor whom the defendant represented, and the defendant had no personal interest in the matter.

Without the evidence on the subject, the jury would very likely have inferred that the sheriff was in fact indemnified.

We are of the opinion that no sufficient reason for reversal appears and that the judgment should be affirmed.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment and order affirmed, with costs.